## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| 7240 SHAWNEE MISSION HOLDING, LLC; 7240 SHAWNEE MISSION HOSPITALITY, LLC; SHAZIA MEMON; and MUKHTIAR MEMON,<br><br>Plaintiffs,<br><br>v.<br><br>NAZIR MEMON; MICHAEL C. AXELROD; TOM PETA, JR.; STACY PETA; PENN TITLE, INC.; FIRST AMERICAN TITLE INSURANCE CO.; FIRST EASTERN LAND TRANSFER, INC.; and ALLSTATES FINANCIAL, INC.,<br><br>Defendants. | Case No. 08-2207 |

---

## MEMORANDUM AND ORDER

Plaintiffs' First Amended Complaint includes twenty-counts against defendants, Nazir Memon, Penn Title, Inc., First American Title Insurance Co., Michael Axelrod,[1] Tom Peta, Jr., Stacy Peta, First Eastern Land Transfer, Inc., and Allstates Financial, Inc. The first nine counts are against Nazir Memon, and the remaining counts are against all Defendants. Plaintiffs' allegations include but are not limited to conspiracy, breach of contract, fraudulent misrepresentation, and unjust enrichment relating to two real estate

---

[1] According to one of Defendants' motions, Mr. Axelrod was incorrectly identified in the complaint as Michael C. Axelrod.

transactions.

Currently before the court are Plaintiffs' motion for leave to file a second amended complaint (doc. 112) and three motions to dismiss filed by various Defendants (docs. 21, 28, & 41).[2]  The motions to dismiss raise essentially the same issue—whether this court has personal jurisdiction over Defendants (other than Nazir Memon).[3] Additionally, Defendants (including Nazir) assert that Plaintiffs have failed to state a claim upon which relief can be granted.  For the reasons stated below, Plaintiffs are allowed to amend their complaint, but Counts II, IV, V, X, XII, XIII, XIV, XVII, and XX are dismissed for failure to state a claim.  Additionally, all Defendants except for Nazir are dismissed for lack of personal jurisdiction.

## 1.      **Factual Background**

Plaintiffs' claims arise out of essentially two alleged transactions.  According to Plaintiffs' First Amended Complaint, Nazir Memon (plaintiff Shazia Memon's father) located a Holiday Inn Property at 7240 Shawnee Mission Parkway, Overland Park, Kansas ("Kansas Holiday Inn") that he indicated would be a good investment for Shazia

---

[2] Penn Title filed two motions to dismiss (docs. 10 & 30), with First American joining the second, each arguing that they were not subject to this court's jurisdiction. The parties have notified the court that they have reached a settlement.  These motions are therefore denied as moot.

[3] Document 21 was filed in response to the original Complaint, prior to Plaintiffs' first amendment.  Document 28 raises essentially the same arguments, but is directed at the First Amended Complaint.  Document 41, filed by First Eastern, incorporates the arguments raised in the other motions.

and her family.  Nazir made various arrangements for the purchase of the hotel throughout Fall 2006 and Winter 2007.  Shazia established 7240 Shawnee Mission Holding, LLC and 7240 Shawnee Mission Hospitality, LLC to serve as the borrowers and prospective owners of the hotel.

Shazia attended the April 2006 closing on the purchase of the Kansas Holiday Inn, which took place at the Kansas Title Insurance Corporation.  She and her husband, Mukhtiar Memon, executed the necessary documents and provided their signatures for the $320,000 loan and purchase of the Kansas Holiday Inn.  After the closing, Shazia and Mukhtiar returned to their home in New Jersey while Nazir managed the hotel.  Mukhtiar moved to Kansas in August 2006, and Shazia moved to Kansas in July 2007.

Plaintiffs claim that a different but allegedly related transaction that took place in June 2006 was unauthorized.  Plaintiffs allege that, without their knowledge, authorization, or approval, Nazir and/or other named Defendants used Plaintiffs' financial and real estate legal description and information for their own financial gain. Specifically, they allege that Defendants forged Shazia and Mukhtiar's signatures on loan documents, which resulted in a lien on their real property in New Jersey.  The $300,000 in note proceeds obtained as a result was allegedly used by Nazir as part of the purchase price for a Holiday Inn in Casper, Wyoming.  In making these allegations, Plaintiffs assert that all named Defendants were involved in both the authorized April 2006 transaction and the unauthorized June 2006 transaction, and that the confidential information given for the April 2006 transaction was then used for the June 2006

3

mortgage and security agreement in violation of the April 2006 contract, representations, and promises that their information would be kept confidential and not used for other purposes.

**2.      Motion to File Second Amended Complaint**

Plaintiffs have filed a Motion for Leave to File Second Amended Complaint (doc. 112), asserting the need to correct a typographical error and to add allegations that would clarify their conspiracy claim.  Penn Title and First American oppose this request (doc. 124), claiming that the amendments would be futile and still subject to dismissal for the reasons set forth in Defendants' motions to dismiss.  Penn Title and First American, however, are no longer part of this action.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend the pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the proposed amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Whether to deny leave to amend is within the district court's sound discretion. *Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1280 (10th Cir. 2007); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006).

The reasons Plaintiffs offered for wishing to amend are sufficient grounds for filing a new complaint at this juncture.  The court will evaluate whether the claims are

4

still subject to the dismissal arguments as it considers the various motions to dismiss. Additionally, the court will construe the pending motions to dismiss (docs. 21, 28, & 41) as applicable to the Second Amended Complaint.

### 3.      Motions to Dismiss Pursuant to Rule 12(b)(2)

Although plaintiff bears the burden of establishing personal jurisdiction over defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon*, 205 F.3d

5

at 1247. Because Kansas's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry that includes both a requirement of minimum contacts and an analysis of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1090.

    A.    Minimum Contacts

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). This standard may be met in two ways.

    1.    Specific Jurisdiction

First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001). The "purposefully directed" requirement is analyzed differently depending upon the cause of action. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant

'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citing *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004)). "In all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

2.      General Jurisdiction

Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."); *accord Doering*, 259 F.3d at 1210. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI Holdings*, 149 F.3d at 1091 (internal quotation marks omitted).

In assessing a corporation's contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to

solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

> B.    Fair Play and Substantial Justice

Even if a defendant's actions created sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 476). This inquiry requires a determination of whether the "exercise of personal jurisdiction over [the] defendant is reasonable in light of the circumstances surrounding the case." *Intercon*, 205 F.3d at 1247 (citing *Burger King Corp.*, 471 U.S. at 477-78). Courts consider the following facts to determine if an exercise of jurisdiction is reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Intercon*, 205 F.3d at 1247 (citing *Burger King Corp.*, 471 U.S. at 473).

## 4.    Personal Jurisdiction over Defendants

All Defendants except for Nazir filed motion to dismiss for lack of personal jurisdiction. The court allowed the parties to conduct limited jurisdictional discovery (doc. 44). Following that discovery and supplemental filings from the parties, the court

now takes up the jurisdictional issues.

### A.    Allstates Financial, Inc. and Tom Peta, Jr.

Mr. Peta is the 100% owner and sole officer and director of Allstates.  Plaintiffs assert that this court has specific jurisdiction over them because they entered into a contract that was to be performed in Kansas (doc. 140).  Specifically, Plaintiffs contend that they entered into a contract with Mr. Peta and Allstates in December 2005 or January 2006, wherein Mr. Peta and Allstates would arrange financing for Plaintiffs' purchase of the Kansas Holiday Inn.  At that time, Shazia had formed 7240 Holding and 7240 Hospitality to serve as borrowers and owners of the Kansas Holiday Inn, and so those Plaintiffs were also involved in the contract with Mr. Peta and Allstates.

Plaintiffs claim that Mr. Peta and Allstates obtained "highly sensitive, personal, and confidential financial information" about them during this contractual relationship, and that Mr. Peta and Allstates, along with other Defendants, then used this information to create fraudulent mortgages in Shazia and Mukhtiar's names.

Mr. Peta and Allstates deny any contractual relationship with Plaintiffs in conjunction with the Kansas Holiday Inn purchase (docs. 143 & 147).  Mr. Peta and Allstates admit assisting Plaintiffs in obtaining financing from a Kansas entity at Nazir's request, but Mr. Peta's affidavit specifically denies entering into any contract.  Mr. Peta and Allstates also contend that the alleged contract has no bearing on the current cause of action because the financing arrangement for the Kansas Holiday Inn revealed no confidential information about Plaintiffs.  Additionally, Mr. Peta and Allstates assert that

Plaintiffs were not Kansas residents at the time of the alleged contract.

Even resolving these factual disputes in Plaintiffs' favor, *Intercon, Inc.*, 205 F.3d at 1247, the court finds that Plaintiffs cannot make a sufficient showing of specific jurisdiction. Even assuming a contractual relationship between Plaintiffs, Mr. Peta, and Allstates, which was initiated and developed outside the state of Kansas, it cannot be said either that Mr. Peta and Allstates purposefully availed themselves of the rights and privileges of conducting business in the state or that Plaintiffs' cause of action arises out of that contract. The contractual relationship contemplated some Kansas connection—i.e., that Mr. Peta and Allstates would find financing for a Kansas real estate transaction—but the alleged breached of that contract does not relate at all to Kansas. Plaintiffs allege that, in connection with this contractual arrangement, Mr. Peta and Allstates gained confidential information and then later used that confidential information for improper purposes. But the gathering of confidential information and the breach of the contract by improperly using that information had no connection to Kansas. Thus, it cannot be said that Plaintiffs' cause of action arose out of Mr. Peta and Allstates' contacts with Kansas.

Plaintiffs also assert that Mr. Peta and Allstates have sufficient minimum contacts with Kansas because, as is required for tort actions, they "purposefully directed" their activities at the forum state. In the context of tort claims, purposeful direction may exist when defendant engaged in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum

state." *Dudnikov*, 514 F.3d at 1072 (interpreting *Calder v. Jones*, 465 U.S. 783 (1984)). It is not enough to establish that "defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state;" instead, Plaintiffs must prove "that defendants undertook intentional actions that were expressly aimed at that forum state." *Id.* at 1077; *Jayhawk Capital Management, LLC v. Primarius Capital LLC*, No. 08-2202, 2008 WL 4305382, *5 (D. Kan. Sept. 18. 2008). Plaintiffs have offered no suggestion that Mr. Peta and Allstates intentionally targeted the state of Kansas in that way.

Plaintiffs also claim that this court has jurisdiction over Mr. Peta and Allstates as co-conspirators of Nazir, for whom personal jurisdiction is not in question. "[W]hen the conspiracy and its overt acts are pleaded with particularity, 'a co-conspirator's contacts with the forum may be attributed to other conspirators for jurisdictional purposes.'" *Dodson Int'l Parts, Inc., v. Altendorf*, 181 F. Supp. 2d 1248, 1254 (D. Kan. 2001) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Kozeny*, 115 F. Supp. 2d 1231, 1237 (D. Colo. 2000)). However, "mere allegations of conspiracy, without some sort of prima facie factual showing of conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the courts." *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij*, 710 F.2d 1449, 1454 (10th Cir. 1983). Thus, in order for personal jurisdiction based on a conspiracy theory to exist, Plaintiffs must offer more than "bare allegations" that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th cir. 2007) (citing *Lolavar v. de Santibanes*, 430 F.3d 221, 229-30 (4th Cir.

2005)).

In their Second Amended Complaint, Plaintiffs allege that Defendants conspired to defraud Plaintiffs by forging their signatures on loan documents and by covering up the forgery.  As discussed below, many of Plaintiffs' causes of action are dismissed for failure to state a claim.  The only surviving tort claim that can serve as the underlying basis for the conspiracy is Nazir's breach of his fiduciary duty.  Arguably, Nazir cultivated that fiduciary relationship at least in part in Kansas within the context of the Kansas Holiday Inn purchase.  Plaintiffs do not, however, allege that the other Defendants were aware of this overt act, much less that they had a "prior conspiratorial agreement" as to Nazir's conduct in Kansas or as to the alleged forged loan documents. *See Good v. Khosrowshahi*, No. 08-2061, 2008 WL 456342, at *3 (10th Cir. Oct. 15, 2008); *see also Am. Land Program*, 710 F.2d at 1454 ("[C]ourts required something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and *of which the out-of-state co-conspirator was or should have been aware*." (emphasis added)) (quoting *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980)).  *Compare Dodson*, 181 F. Supp. 2d at 1254-55 (finding conspiracy jurisdiction when plaintiff's complaint included specific allegations of an agreement between the defendants and of specific conspiracy actions that occurred in the forum state).  Thus, Plaintiffs' bare allegations of conspiracy are insufficient to

support personal  jurisdiction over Nazir's alleged co-conspirators.[4]

Moreover, even if Plaintiffs could establish contacts between Mr. Peta and Allstates and the forum state, either their own contacts or those of co-conspirators, the court finds that exercising jurisdiction in this instance "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 476).   As noted above, courts consider the following facts to determine if an exercise of jurisdiction is reasonable such that it would not violate due process:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Intercon*, 205 F.3d at 1247 (citing *Burger King Corp.*, 471 U.S. at 473).  Here, Mr. Peta and Allstates have very few (if any) ties to Kansas and all of their witnesses and documents are out of state.  Additionally, Kansas does not have a strong interest in resolving the dispute given that the portions of the contract that were breached, as well as the breach itself, occurred in another state.

For these reasons, Mr. Peta's and Allstates' motions to dismiss for lack of jurisdiction are granted.

**B.      First Eastern and Stacy Peta**

---

[4] The court previously cautioned Plaintiffs that conclusory allegations of conspiracy cannot serve as the basis for personal jurisdiction.  (Doc. 44, p. 9 n.5.)

First Eastern is a title insurance agency that orders title insurance reports and commitments but does not itself write title insurance policies.  According to Plaintiffs, Stacy Peta, Mr. Peta's wife, works for First Eastern notarizing and recording documents.  Plaintiffs also contend that Mr. Peta owns a 49% interest in First Eastern.  Plaintiffs argue that this court has jurisdiction over First Eastern and Ms. Peta based in large part on their connection to Mr. Peta, claiming that everything Mr. Peta did was attributable to First Eastern and Ms. Peta (doc. 140).  First Eastern and Ms. Peta dispute that notion and also argue that this court lacks jurisdiction over them (docs. 144 & 145).

Given that this court has rejected Plaintiffs' argument for personal jurisdiction over Mr. Peta, this court similarly concludes that First Eastern and Ms. Peta are also not subject its jurisdiction.  The motions to dismiss filed by First Eastern and Ms. Peta are granted.

### C.     Michael Axelrod

According to Plaintiffs, Mr. Axelrod is a successful businessman who engages, at least in part, in the business of making loans.  Plaintiffs argue that this court has specific personal jurisdiction over him, as with the other Defendants, because he entered into a contract that was to be performed in Kansas, because he committed a tort directed at Kansas, and because he is a co-conspirator of Nazir (doc. 140).  Mr. Axelrod explains that he loaned Shazia and Mukhtiar $320,000, secured by a mortgage on one of their New Jersey properties (doc. 146).  Plaintiffs contend that these loan proceeds were used to help purchase the Kansas Holiday Inn, and that during the loan transaction, Mr.

14

Axelrod became aware of personal confidential information that he later misappropriated.

The court rejects this argument of jurisdiction for the same reason it rejected the similar argument concerning Mr. Peta and Allstates. The contract with Mr. Axelrod has a very attenuated connection to Kansas, even less so than the arrangement with Mr. Peta. Even though Plaintiffs claim that Mr. Axelrod knew that the loan proceeds were to purchase the Kansas Holiday Inn, the agreement with Mr. Axelrod on its face is merely a loan secured by a mortgage on New Jersey property.

Even assuming that connection, however, the part of the contract associated with Kansas was performed—Mr. Axelrod loaned Shazia and Mukhtiar money; they used that money to buy the Kansas Holiday Inn. Plaintiffs' cause of action arises from the gathering of confidential information and the breach of the contract by improperly using that information. And those activities had no connection to Kansas. Thus, Plaintiffs' cause of action does not arise out of any alleged contacts Mr. Axelrod had with Kansas.

Plaintiffs raise the same jurisdictional arguments as before concerning a tortious act directed at Kansas and minimum contacts of a co-conspirator. For the reasons set out above, the court again rejects those arguments.

Thus, Mr. Axelrod's motion to dismiss for lack of jurisdiction is granted.

## 5.    Motion to Dismiss Pursuant to Rule 12(b)(6)

As noted above, Counts I through IX are against Nazir only; the remaining ten counts are against all Defendants. Given the court's dismissal of all Defendants other

15

than Nazir, all twenty counts of the Second Amended Complaint now relate only to Nazir. In general, it appears that the first nine counts relate to the negotiation and purchase of the Kansas Holiday Inn; the remaining ten counts address the alleged misappropriation of Plaintiffs' confidential information to forge mortgages on their property. Nazir seeks dismissal of all of them (docs. 21 & 28).

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl.*, 127 S. Ct. at 1964-65. The court accepts the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and views all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

16

A.      **Counts I & XI (Breach of Contract) and Counts VI & XVI[5] (Breach of the Implied Covenant of Good Faith and Fair Dealing)**

Nazir maintains that Plaintiffs' conclusory allegations are insufficient to establish the existence of a contract regarding the purchase of the Kansas Holiday Inn or of a contract to not use Plaintiffs' confidential financial information.  Without actual contracts, Nazir argues, Plaintiffs cannot raise a claim for breach of contract or for breach of the implied covenant of good faith and fair dealing.

Although Plaintiffs must go beyond a bare recitation of the cause of action, *Bell Atl.*, 127 S. Ct. at 1964-65, nothing requires them to explain in detail how each element of a contract was satisfied during the parties' interactions.  The details Plaintiffs provided about their relationship with Nazir with respect to the Kansas Holiday Inn purchase and financing are sufficient to establish a contract between them and Nazir, particularly when this court draws all inferences in Plaintiffs' favor, as it must do at this stage in the proceedings.  *Tal*, 453 F.3d at 1252.

The motion to dismiss counts I, VI, XI, and XVI is denied.

B.      **Counts II & XIV (Negligence)**

Under Kansas negligence tort law, Plaintiffs must establish "(1) the existence of a duty; (2) an act or omission in breach of that duty; (3) proximate cause; and (4) an

---

[5] The Motions to Dismiss actually reference Count XIII and not Count XVI.  But Count XIII is a claim for breach of warranty, not good faith and fair dealing, and Nazir specifically addresses Count XIII in a later section of the motion.  Plaintiffs failed to correct the error, but the court assumes that Nazir intended to reference Count XVI in this discussion.

injury." *Fieser v. Kan. Bd. of Healing Arts*, 130 P.3d 555, 557 (Kan. 2006). Nazir argues that Plaintiffs have failed to plead facts showing that he owed any duty to them.

Although the numbered paragraphs under each specific count only assert a general negligence claim, several other paragraphs of factual allegations offer more detail about Plaintiffs' negligence claims. Paragraphs 26, 31, and 50, for example, identify three particular situations in which Plaintiffs contend that Nazir failed to exercise reasonable care when he had a duty to do so. By alleging that the defendant acted in a negligent manner, plaintiff has, in essence, alleged that the defendant did not act with reasonable care. *Ludwikoski v. Kurotsu*, 840 F. Supp. 826, 828 (D. Kan. 1993). Pleadings must be liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed. R. Civ. P. 8(a). The court finds that Counts II & XIV, considered in the light most favorable to Plaintiffs, sufficiently allege the required elements for negligence.

Nazir also argues, however, that the economic loss doctrine bars Plaintiffs' attempts to recover under a negligence theory. In Kansas, a negligence action is unavailable if only economic damages are sought. *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983); *Broce-O'Dell Concrete Prods., Inc. v. Mel Jarvis Constr. Co.*, 634 P.2d 1142, 1145 (Kan. Ct. App. 1981); *see also Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 812 F. Supp. 185, 188 (D. Kan. 1993). This doctrine was designed to prevent a person from asserting a tort remedy in circumstances governed by the law of contracts. *Prendiville v. Contemporary Homes, Inc.*, 83 P.3d 1257, 1260

(Kan. Ct. App. 2004); *see also United Int'l Holdings, Inc. v. Wharf (Holdings), Ltd.*, 210 F.3d 1207, 1226 (10th Cir. 2000).

In response to this argument, Plaintiffs assert that "the economic loss doctrine does not bar plaintiffs' attempts to recover in negligence," with no further explanation or analysis.  After reviewing Plaintiffs' Complaint, this court finds only economic damages asserted.  Accordingly, Plaintiffs' claims for negligence in Counts II and XIV shall be dismissed for failure to state a claim upon which relief can be granted.

### C.    Counts III & XV (Breach of Fiduciary Duty)

Under Kansas law, a fiduciary relationship can be "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan.1982).  Factors to considering in evaluating whether a fiduciary relationship exists include: (1) a special confidence is placed by one entity in another; (2) a duty to act primarily for another's benefit; (3) a party possessing and exercising influence over another; (4) superiority of one of party over the other; and (5) the property, interest, or authority of the other is placed in the charge of the fiduciary.  *Id.* Nazir asserts that Plaintiffs offered only conclusory allegations regarding any fiduciary duty, and none relating to any relationship of special confidence or assumption of duties.

Plaintiffs allege that Nazir negotiated the acquisition of the hotel on their behalf and that he kept them mostly in the dark about the details.  Plaintiffs asserted that they relied solely on information from Nazir regarding the purchase contract, financial

projections, and scheduled improvements of the property. *See, e.g.*, Seconded Am. Compl. ¶¶ 18-21, 23, 25.  These allegations are sufficient to establish, at this stage in the litigation, that Nazir was acting as a fiduciary on behalf of Plaintiffs.

The motion to dismiss these counts is denied.

### D.    Counts IV & XII (Fraudulent Misrepresentation)

Nazir suggests that Plaintiffs' fraudulent misrepresentation claims are subject to dismissal under Fed. R. Civ. P. 9(b), which provides that in alleging fraud, a party must state the circumstances constituting fraud with particularity.  Rule 9(b)'s heightened pleading requirements serve to provide defendants adequate notice of the plaintiff's claim, to protect defendants from reputational damage caused by "improvident charges of wrongdoing," and to "inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992) (quotation omitted). However, "the requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). Ultimately, in order to survive a motion to dismiss, an allegation of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).  In other words, the plaintiff must set out set out the "who, what, where, and when" of the alleged fraud. *Plastic Packaging Corp. v. Sun Chemical Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (citing *Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WL 191615 (D. Kan.

May 21, 1993)).

Plaintiffs' fraudulent misrepresentation allegations in Count IV, concerning the purchase of the Kansas Holiday Inn, satisfy the Rule 9(b) test.  In several places, Plaintiffs identify representations that Nazir made concerning the hotel purchase. Plaintiffs' complaint sets forth a time line that includes sufficient detail about when and where the statements were made to put Nazir on notice of their claim.  *See, e.g.*, Second Am. Compl. ¶¶ 18, 23, 28, 29.

The same cannot be said of Count XII, which alleges fraudulent misrepresentation in conjunction with the forged mortgage.  Although Plaintiffs allege that all Defendants "represented to Plaintiffs that they would limit the use of the confidential asset and financial information given to them . . . solely for Plaintiffs' benefit," the complaint contains no details about precisely when or where this representation was made.  Thus, this count is dismissed.

Nazir also argues that Plaintiffs failed to allege the required elements of a fraudulent misrepresentation claim.  Under Kansas law, "fraud is never presumed and must be established by clear and convincing evidence." *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004). The elements of fraud are as follows: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies and acts to his or her detriment. *Id.* at 1199.  To state an actionable fraud claim, the alleged misrepresentations must relate to some present or pre-existing fact and cannot

ordinarily be predicated on unfulfilled promises or statements as to future events. *Edwards v. Phillips Petroleum Co.*, 360 P.2d 23, 26 (Kan. 1961). When the alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is a fraudulent misrepresentation concerning a present, existing intention to perform when no such intention existed. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 824 (Kan. 1979).

Nazir contends that the allegedly fraudulent statements all related to future events and that Plaintiffs have failed to allege that he had a present intention not to perform as promised. According to Count IV of the Second Amended Complaint, the misrepresentations Nazir made include:

> that the Kansas Holiday Inn would be a sound and profitable investment for them and that he would, like a father, fully look after their interests in investing plaintiffs' monies, acquiring the Kansas Holiday Inn, managing the Kansas Holiday Inn, until they were able to relocate to Kansas, negotiating the agreements for the acquisition of the Kansas Holiday Inn and negotiating the agreement for handling the PIP Improvements completion.

These are representations concerning future actions—that the hotel would be a good financial investment (in the future) and that Nazir would look out for them throughout the (forthcoming) process. Plaintiffs have identified no allegation, however, that at the time Nazir made these representation he did not intend to perform. Accordingly, they have failed to state a claim for fraudulent misrepresentation.[6]

---

[6] The court contemplated providing Plaintiffs an opportunity to amend their
(continued...)

Counts IV and XII are dismissed.

### E.       Counts V & XIII (Breach of Warranty)

Plaintiffs contend that Nazir breached "an implied warranty to perform in a good and competent manner and to exercise reasonable care in doing the same." Nazir asserts that no such warranty exists under Kansas law. Plaintiffs failed to respond to that argument, and this court can also find no such warranty. These counts therefore are dismissed for failure to state a claim.

### F.       Counts VII & XVII (Unjust Enrichment)

Under Kansas law, the elements of an unjust enrichment claim are (1) plaintiff conferred a benefit on defendant; (2) defendant knew and received a benefit; and (3) defendant retained the benefit under circumstances that make it unjust. *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996). Nazir asserts that Plaintiffs failed to allege these elements.

Plaintiffs explain, however, that Nazir received the proceeds from the forged loan made against the equity Plaintiffs had accrued in their properties. Any benefit he diverted to himself as a result of that loan would be unjust enrichment. Thus, at this

---

[6](...continued)
complaint to clarify their allegations of fraudulent misrepresentation. Defendants framed this argument, however, in their motions to dismiss, filed before Plaintiffs chose to amend their complaint for the second time. Thus, had Plaintiffs been able to allege in good faith the elements of fraudulent misrepresentation as discussed, they likely would have do so already. Allowing yet another opportunity to amend would, therefore, be futile.

stage in the proceedings, Plaintiffs' unjust enrichment claim can stand.  Both of Plaintiffs' unjust enrichment claims, however, arise out of the alleged misuse of Plaintiffs' confidential information and forging of loan documents in their names.  Count VII is against Nazir only, while Count XVII is against all Defendants.  Given that all Defendants except for Nazir have now been dismissed, Count VII and Count XVII are duplicative.  Thus, Count XVII is dismissed.

### G.    Counts VIII & XVIII (Constructive Trust) and Counts IX & XIX (Accounting)

Constructive trusts and accounting are equitable remedies and are thus available only when the remedy at law is inadequate.  Nazir argues that Plaintiffs' request for an accounting should be dismissed because Plaintiffs failed to allege within those counts that the remedy at law is inadequate.  Those counts, however, incorporate all prior paragraphs, including the paragraphs in the constructive trusts counts that explicitly allege that the remedy at law is inadequate.

Nazir also argues that a constructive trust is inappropriate because Plaintiffs have failed to allege a confidential relationship or fraud.  Actual or constructive fraud, however, is no longer required for a constructive trust in Kansas.  *Nelson v. Nelson*, 205 P.3d 715, 729 (Kan. 2009).  Instead, "[r]ather than being tied to the nature of the claim, the imposition of a constructive trust is a remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to those to whom the

24

property justly belongs." *Id.* Although the fraud claims have been dismissed, the court sustained the claims concerning fiduciary duty and unjust enrichment, both of which could serve as the basis for a constructive trust.

The motion to dismiss these counts is denied.

### H.   Count X (Conspiracy)

Nazir argues that Count X should be dismissed because Plaintiffs have failed to adequately plead all of the necessary elements of a conspiracy. As noted in the above analysis regarding conspiracy jurisdiction, this court agrees. Although Plaintiffs have alleged that Defendants conspired to forge mortgage documents, the complaint contains no allegations of a prior agreement to defraud Plaintiffs. Moreover, the only remaining claim that could serve as the underlying tort of the conspiracy is Nazir's breach of fiduciary duty. But Plaintiffs do not assert that he conspired with any of the other Defendants to establish that relationship and then breach it by sharing with them Plaintiffs' confidential information. Plaintiffs' obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl.*, 127 S. Ct. at 1964-65. This count is therefore dismissed.

### I.   Count XX (Slander of Title)

In Kansas, slander of title is "a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing injury to that person." *LaBarge v. City of Concordia*, 927 P.2d 487, 492 (Kan. Ct. App. 1996).

25

Nazir argues first that Plaintiffs failed to allege special damages, or actual loss from the slander, as required for a slander of title claim. *See*, *Watkins v. Conway*, 257 P. 937, 939 (Kan. 1927); *see also Hall v. Kan. Farm Bureau*, 50 P.3d 495, 504 (Kan. 2002) (defining special damages as actual loss, within the defamation context). Plaintiffs contend that they allege special damages "including, but not limited to, expense relating to the delay of [their] closing." But Plaintiffs fail to identify where in the complaint that allegation comes, and this court is unable to find it.

Moreover, Nazir maintains that Plaintiffs claim is barred by the one-year statute of limitations. *LaBarge*, 927 P.2d at 492. The allegedly forged loan was made in June 2006, and Plaintiffs filed this action nearly two years later in May 2008. In response, Plaintiffs assert that "[t]he statute of limitations is not relevant to a 12(b)(6) claim." They are incorrect.

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show that relief is barred by the applicable statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). In the context of Rule 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff to determine whether the statute of limitations has been met. *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d

1251, 1254 (10th Cir. 2008).

According to the face of the Second Amended Complaint, the allegedly forged mortgage was made in June 2006, well over one year before Plaintiffs' initiated this action.  In response, Plaintiffs merely assert that they "disagree with defendants' arguments that plaintiffs' slander of title claims are time-barred."  But they provide this court with no further explanation as to how this claim is timely.

Given the allegations in the complaint, this count is dismissed.[7]

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. 112) is granted.  Counsel is ordered to file the tendered Second Amended Complaint by October 5, 2009.

**IT IS FURTHER ORDERED** that Penn Title's and First American's Motions to Dismiss for Lack of Jurisdiction (docs. 10 & 30) are denied as moot given the parties' representation that they have reached a settlement.

---

[7] In connection with their response to Defendants' personal jurisdiction arguments (doc. 140), Plaintiffs submitted Shazia's affidavit.  In that document, Shazia specifically identifies actual loss suffered as a result of the alleged slander of title, including delayed closing and a $45,000 owner carry-back that the prospective buyer negotiated as a result.  Also in that affidavit, however, Shazia avers that she and Mukhtiar discovered the forged mortgages in January 2007 and April 2007, which confirms that the slander of title claim is untimely.  Thus, even if the court were to permit Plaintiffs to amend their compaint to include the allegations in Shazia's affidavit, the amendment would be futile because the slander of title claim would still be dismissed as untimely.

**IT IS FURTHER ORDERED** that Motions to Dismiss (docs. 21 & 28) are granted in part and denied in part. Defendants Allstates, Mr. Axelrod, Mr. Peta, and Ms. Peta are dismissed from this action. Additionally, Counts II, IV, V, X, XII, XIII, XIV, XVII, and XX are dismissed as to Defendant Nazir Memon.

**IT IS FURTHER ORDERED** that Motions to Dismiss (doc. 41) is granted. Defendant First Eastern is dismissed from this action.

**IT IS SO ORDERED** this 30th day of September, 2009.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
